# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| BCause LLC, | ) | Case No. 19-10731 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| BCause Mining LLC, | ) | Case No. 19-10562 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| | ) | |

## WESCO'S PRELIMINARY OBJECTIONS TO DEBTORS' CASH COLLATERAL AND PAYROLL MOTIONS

BCause Mining LLC ("BCause Mining") filed its bankruptcy petition on April 11, 2019 (Case No. 19-10562). With its chapter 11 petition, BCause Mining filed motions to use cash collateral [D.I. 3] and to provide adequate assurance to utilities [D.I. 4]. BCause Mining's cash collateral motion specifically sought permission to spend cash from a bank account held by its parent, BCause LLC ("BCause LLC" and together with BCause Mining, the "Debtors"), at Lakeside Bank ("Lakeside").

Subsequently, on April 12, 2019, BCause LLC filed its bankruptcy petition (Case No. 19-10731), along with its own motion to use cash collateral (D.I. 5) and a motion to pay prepetition payroll (D.I. 6). In its cash collateral motion, BCause LLC seeks to access the same Lakeside account.

WESCO Distribution, Inc. ("WESCO") has a perfected lien in the cash and the Lakeside bank account, along with the Debtors' other assets. WESCO objects to both cash collateral motions and the payroll motion. In support thereof, WESCO states as follows:

{8034602:11}

*WESCO'S Security Interests and Liens*

On December 4, 2017, BCause Mining executed that certain Application for Business Credit, attached hereto as <u>Exhibit A</u> (the "<u>Application</u>"). BCause LLC was listed as BCause Mining's parent. Paragraph 10 of the Application grants a blanket lien in all assets of BCause Mining, including all BCause Mining cash, cash equivalents, and accounts, and proceeds thereof. Attached hereto as <u>Exhibit B</u> is the UCC financing statement filed with respect to WESCO's security interests and liens (the "<u>UCC-1</u>").

On December 5, 2018, BCause Mining (as judgement debtor) and BCause LLC (as guarantor) executed that certain Virginia Promissory and Confessed Judgment Note in the principal amount of $1,358,610.51, attached hereto as <u>Exhibit C</u>. The Debtors defaulted on the note and on March 1, 2019, WESCO entered and filed that certain Confession of Judgment in the principal amount of $1,896,349.34 with the Circuit Court of Arlington County, Virginia, attached hereto as <u>Exhibit D</u> (the "<u>Confession of Judgment</u>"), against BCause LLC and BCause Mining, among others. The time to vacate the Confession of Judgment has expired, and the judgment has gone final. VA St. § 8.01-433. Attached hereto as <u>Exhibit E</u> and <u>Exhibit F</u> is the Foreign Judgment registered in Cook County, Illinois, on April 2, 2019. Accordingly, after the Confession of Judgment was entered in Virginia, WESCO followed the appropriate steps to register the Confession of Judgment in Illinois. The Confession of Judgment creates a lien in favor of WESCO under Virginia law attaching to BCause Mining and BCause LLC's real property, attaching as of the date of entry of the Confession of Judgment on March 1, 2019. *See* VA St. §§ 8.01-431, 8.01-434 (noting that a lien for a confessed judgment "shall attach and be binding from the time such judgment is recorded on the judgment lien docket of the county or city in which land of the defendant lies"); *see also American Bank & Trust Co. v. National Bank*

*of Suffolk,* 170 Va. 169 (1938) (providing that a clerk's failure to enter a judgment into an order book had no impact on the effectiveness of a judgment; the judgment was effective from the date the confession was entered).[1]  Attached hereto as Exhibit G are the relevant Virginia statutes.

On April 1, 2019, that certain Garnishment Summons and Suggestion for Summons in Garnishment issued in the Arlington County, Virginia Circuit Court (the "Garnishment"), for the total balance of $1,915,137.77, naming BCause LLC and BCause Mining as the Judgment Debtors and Lakeside as the Garnishee.  Attached hereto as Exhibit H and Exhibit I are the Garnishment Summons issued on April 1, 2019, from the Arlington County, Virginia Circuit Court, and the Garnishment Summons issued in Cook County on April 2, 2019.  Pursuant to the Garnishment, Lakeside has to withhold the cash in the account up to the total balance on the Garnishment.  The Garnishment together with the writ of *fieri facias* integrated into the Garnishment create a lien in favor of WESCO under Virginia law, attaching to both the cash in the Lakeside bank account and to the bank account itself.  *See* VA St. §§ 8.01-511, 8.01-478 (providing that the writ of fieri facias may be levied on money, bank notes, and chattels of the debtor); *see also U.S. v. Hawkins Builders, Inc.*, 45 F.3d 830 (4th Cir. 1995) (a garnishment is a method by which a judgment creditor may enforce the "lien of his execution" against a judgment debtor's property in the possession of a third party).  Attached hereto as Exhibit J are the relevant Virginia statutes providing the basis for the lien.  The Garnishment was appropriately served on Lakeside (as Garnishee), as detailed in the service affidavits attached hereto as Exhibit K.

It is evident from the materials submitted by the Debtors that all cash in the Lakeside bank account derives from the operations of BCause Mining, not BCause LLC.  The budget attached to the BCause Mining cash collateral motion sets forth revenues of $1,021,252.00 on

---

[1] VA St. § 8.01-434 provides that the Confession of Judgment also may be a basis for execution against a judgment debtor's personal property.

{8034602:11 }    3

account of Mining Hosting Fees. The budget attached to the BCause LLC cash collateral motion does not reflect any revenues; it only reflects expenditures. In addition, the consolidated, unaudited profit and loss statement dated January 2019 for the BCause group indicates income only for Mining Hosting, which occurs only out of BCause Mining.[2] Thus, the cash in the Lakeside account derives from BCause Mining's accounts receivable and other assets, and hence constitutes WESCO's collateral and proceeds of such collateral pursuant to the Application and the UCC-1. Further, as already discussed, the Garnishment grants WESCO a security interest and lien in and against the Lakeside account and the cash therein. The Debtors acknowledge these interests in their motions. (BCause Mining cash collateral motion at ¶¶ 10, 13-14; BCause LLC cash collateral motion at ¶¶ 11-13)

*General Objection*

It is incumbent upon the Debtors to explain to the Court and the other parties in the bankruptcy cases how the relief sought in the cash collateral and payroll motions advances the Debtors' reorganization and preserves value for stakeholders. Unfortunately, the Debtors provide zero explanation and hence leave the Court and WESCO in a vacuum and without any justification. The Debtors bear the burden of demonstrating to the Court the purpose for these chapter 11 cases, including why the Court should permit the Debtors to use WESCO's cash collateral and WESCO's other collateral to pay prepetition claims of unsecured creditors and continue operations. *See In re Sterling Estates (Delaware) LLC*, No. 10 B 22319, 2011 WL 45602, at *6 (Bankr. N.D. Ill. Jan. 6, 2011) (in opposition to section 362(d) motion for relief from stay, debtor must demonstrate "'an effective reorganization that is in prospect,'" which means "'there must be a reasonable possibility of a successful reorganization within a reasonable

---

[2] The BCause consolidated financial statements will be filed under seal, as <u>Exhibit L</u> hereto, since WESCO obtained these statements pursuant to a confidentiality agreement and the Debtors would not consent to filing not under seal.

{8034602:11}    4

time.'") (quoting *United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76 (1988)).

### *Objections to Cash Collateral Motions*

Under Section 363(p) of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), the Debtors bear the burden of proof on the issue of adequate protection, while the secured creditor bears the burden of proof on the issue of the validity, priority, or extent of its interests. *See In re Am. Consol. Transp. Cos., Inc.*, 2009 WL 3571268 (Bankr. N.D. Ill. Oct. 28, 2009).

WESCO respectfully submits that it has met its burden under section 363(p). In meeting their burden under section 363(p), the Debtors must demonstrate that they will maintain or increase the value of WESCO interest in its collateral or that a substantial equity cushion exists. *Id*. Here, the Debtors have not attempted to demonstrate an equity cushion, and the adequate protection offered by the Debtors does not come close to compensating WESCO for diminution due to spending the cash in the Lakeside account.

In both of their cash collateral motions, the Debtors state that they need to use cash collateral to operate the business, to preserve the value of the Debtors' assets, and to effectuate a reorganization. However, as already stated, the Debtors provide no visibility on the plan or timeline for such a reorganization. The budgets attached to both motions provide for only four weeks of operation, through May 10, 2019. Thus, assuming the Debtors cannot in fact confirm a chapter 11 plan and successfully restructure during that period – an almost 100% certainty – all the Debtors' requested relief can accomplish is using WESCO's collateral to pay the Debtors' prepetition and postpetition unsecured creditors for a few weeks.

In response, the Debtors surely will argue that they would grant replacement liens to protect WESCO's position. However, as a preliminary matter, the Debtors provide no support for the value of accounts receivable and machinery and electrical equipment asserted in the BCause Mining cash collateral motion (¶ 14). *See In re Am. Consol. Transp. Cos., et al.*, No. 09 B 26062, 2010 WL 3655485, at *5 (Bankr. N.D. Ill. Sept 10, 2010) ("Debtor's property should be valued using a fair market yardstick"). The Debtors also do not clarify which legal entity actually owns and possesses these assets, an important issue in light of movement of cash and potentially other assets between BCause Mining and BCause LLC. Most importantly, the Debtors do not explain to what post-petition collateral the replacement liens would attach. Assuming the Debtors are not purchasing any new machinery, electrical assets, or other personal or real assets during the four-week period covered by the alleged budgets, the Debtors only can grant replacement liens on accounts receivable or cash generated by the Debtors, which can only be BCause Mining accounts receivable or cash; BCause LLC does not generate any income. However, these assets are proceeds of WESCO's prepetition collateral, over which WESCO already has a lien, and provide nothing new to protect WESCO's interests. 11 U.S.C. § 552(b). Furthermore, if the Debtors expect $1,021,252.00 in Mining Hosting Fees the week of May 3, 2019, as set forth in the BCause Mining budget, the Debtors do not explain why they cannot use these cash receipts to pay the $997,854 in projected aggregate expenditures set forth in the cash collateral budgets. Presumably, these anticipated cash receipts should moot the cash collateral motions.

Most meaningful among the Debtors' projected expenditures is a $600,000.00 anticipated payment by BCause Mining to Dominion Energy the week of April 26, 2019. The Debtors provide no explanation as to the timing or amount of this payment, and they make no effort to

clarify whether this payment is on account of prepetition or postpetition services. The objection filed by Dominion Energy to the BCause Mining utility motion (Case No. 19-10562, D.I. 7) suggests in fact this $600,000 payment results from prepetition services. According to Dominion Energy, it bills the Debtors on a monthly basis for charges incurred the prior month, meaning that Debtors' payment in April would cover March services. The Debtors do not explain why the Court should permit the Debtors to use WESCO's cash collateral to pay Dominion Energy's prepetition unsecured claims.

In addition, Dominion Energy argues the Debtors must post an additional deposit of $1,590,000.00. If the Court grants this request, the Debtors would have to cover $2,587,854.00 in expenses ($997,854.00 in projected aggregate expenditures under the cash collateral budgets plus the $1,590,000.00 deposit), resulting in a significant funding shortfall (after taking into account the $1,021,252.00 in Mining Hosting Fees) even if the Court grants the Debtors' cash collateral motions and allows the Debtors to access all $911,000.00 in the Lakeside account. In other words, the Court would be allowing the Debtors to spend WESCO's cash collateral to fund an administrative insolvent estate – and that does not even take into legal fees (for the Debtors and a creditors' committee) and U.S. Trustee fees, for which the Debtors have yet to account – which by definition means the Debtors cannot adequately protect WESCO's interests under the circumstances of these cases. Even if the Court denies Dominion Energy's request in whole or in part, it is evident that the Debtors have not appropriately budgeted for these bankruptcy cases and, in a best case scenario, have left themselves no margin for error.

In the face of the foregoing deficiencies and challenges, the Debtors offer as alleged adequate protection nothing more than inspection rights, "maintenance" of collateral through insurance and good repair, and replacement liens on collateral against which WESCO already

has liens. That does not suffice, particularly in light of the Debtors woefully unrealistic and deficient budgeting for these cases. In exchange for burning through the cash in the Lakeside account, the Debtors propose no compensation or other meaningful protections to WESCO. At the same time, the Debtors provide no path or other explanation to understand how spending that money would serve a reorganization or other legitimate purpose in these cases. *See Sterling Estates*, 2011 WL 45602 at *7 (Bankr. N.D. Ill. Jan. 6, 2011) (in light of declining value of collateral, finding insufficient as adequate protection debtor's proposal only for inspection rights, maintenance of insurance, evidence of cash collateral, and maintenance of collateral in good repair).

To the extent the Court is inclined to permit use of cash collateral, the Court should narrowly tailor its relief and appropriately compensate WESCO. *Id.* at *5 ("'[I]f a creditor is threatened with a decline in the value of interest in the estate's property, the estate must take action to make up the decline, either through cash payments or liens on other property.'" ) (quoting *In re Markos Gurnee P'Ship*, 252 B.R. 712, 716 (Bankr. N.D. Ill. 1997)). To that end – again only if the Court grants the cash collateral motion in whole or in part (which the Court shouldn't) – cash collateral use should be permitted solely on a week-to-week basis and only to the extent absolutely necessary to cover actual, critical expenditures. The Court should require the Debtors to submit weekly budgets and, at the preliminary hearing, explain how and under what timeline the Debtors intend to reorganize. The Court also should require as a condition for cash collateral use that the Debtors submit a more customary 13-week budget providing for the Debtors' administrative solvency, as that would evidence a more realistic timeline and commitment from the Debtors.

Moreover, the Court should require that the Debtors make regular payments to WESCO. As the Debtors concede in their cash collateral motions, they filed these cases to forestall the Garnishment. Absent the filing of these cases, WESCO would be realizing against the Lakeside account.[3] Thus, any expenditures from cash at Lakeside should be matched by payments to WESCO. Assuming the Debtors can convince the Court of a realistic expectation of receiving the Mining Hosting Fees, and further assuming that the Debtors can actually finance these cases, the Court should require that WESCO be paid all or a significant portion of the Mining Hosting Fees when received by the Debtors. Finally, the Court should grant WESCO replacement liens on all postpetition cash, accounts, and other assets of the Debtors.[4]

*Objections to Payroll Motion*

BCause LLC cites to no authority for the relief requested in its payroll motion. Particularly after the Seventh Circuit's decision in *In re Kmart Corp.*, 359 F.3d 866 (7th Cir. 2004), this is problematic. While Bankruptcy Courts in this district have approved first-day wage motions subsequent to the *Kmart* decision, they have required a rigorous evidentiary showing. As the Seventh Circuit cautioned, "it is prudent to read, and use, § 363(b)(1) to do the least damage possible to priorities established by contract and by other parts of the Bankruptcy Code." *Id*. at 872. The Seventh Circuit articulated a dual-pronged standard for a debtor to satisfy as a condition to honoring prepetition obligations. First, a debtor must establish that prepetition creditors will cease dealing with the debtor if not immediately paid for prepetition obligations. Second, a debtor must establish that "the business will gain enough from continued

---

[3] Because these bankruptcy cases serve no purpose other than forestalling the Garnishment, WESCO anticipates filing a motion to dismiss the bankruptcy cases or, in the alternative, for relief from the automatic stay to realize against the cash in the Lakeside account.

[4] WESCO reserves the right to seek additional adequate protection and other relief, as necessary in these cases. The Debtors never contacted WESCO prior to the filing of these cases to discuss whether WESCO would agree to consensual use of cash collateral.

transactions with the favored [creditor] to provide some residual benefit to the remaining . . . creditors, or at least leave them no worse off." *Id*. at 868.  Under this standard, the BCause LLC payroll motion falls woefully short.

BCause LLC proposes to use the WESCO's cash collateral in the Lakeside account – cash belonging BCause Mining – without articulating any reorganization or other purpose served by such relief.  While no doubt unpaid employees presents an unpleasant prospect, by itself that reason does not justify transferring value from the Debtors' senior secured creditor to the Debtors' employees, who constitute unsecured creditors.

BCause LLC also provides no detail on the amount or nature of the wage and benefit obligations it seeks to pay.  This is troubling.  The budget attached to the BCause LLC cash collateral motion indicates $174,500.00 to be paid the week of April 19, 2019.  The payroll motion sets forth the same amount (at ¶ 12).  However, it is unclear how this amount reconciles with the payroll journal attached to the motion that supposedly details the amounts paid to employees.  In addition, BCause LLC does not indicate whether it proposes to pay the prepetition wages of any insiders, which can be viewed as, among other things, an end-run around the requirements of section 503(c) of the Bankruptcy Code.  Finally, BCause LLC buries in the payroll motion its request to pay Paychex, it payroll service provider, approximately $86,000.00 for prepetition services (at ¶ 13).  WESCO is not aware of authority for lumping payroll service providers with employees for purposes of a motion seeking to make payments to employees.  To the extent the Debtors seek to pay Paychex as a critical vendor or through some other theory, the Debtors must meet the standards of *Kmart* and other relevant authority for such relief.

*Conclusion*

The Court should either: (a) deny both of the Debtors' cash collateral motions and BCause LLC's payroll motion; or (b) condition any relief granted on adequately protecting WESCO's interests in the Lakeside account and the Debtors' other collateral.


Dated:  April 17, 2019                         /s/  David A. Agay
                                                  David A. Agay (ARDC No. 6244314)
Shara Cornell (ARDC No. 6319099)
McDonald HOPKINS LLC
300 North LaSalle Street, Suite 1400
Chicago, Illinois 60654
Telephone:  (312) 280-0111
Facsimile:  (312) 280-8232
dagay@mcdonaldhopkins.com
scornell@mcdonaldhopkins.com

## CERTIFICATE OF SERVICE

  I, David A. Agay, hereby certify that, on April 17, 2019, I caused a copy of the foregoing **PRELIMINARY OBJECTIONS TO DEBTORS' CASH COLLATERAL AND PAYROLL MOTIONS** to be electronically filed with the Clerk of Court using the Electronic Case Filing System, which automatically served all parties who are deemed to have consented to electronic service.

                 /s/ David A. Agay